692 A.2d 1039

**ASSOCIATION OF CATHOLIC TEACHERS, LOCAL 1776, Margaret J. Doyle and Brian Fagan, Appellants,**

**v.**

**PENNSYLVANIA LABOR RELATIONS BOARD and Norwood–Fontbonne Academy, Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 28, 1997.

Decided April 21, 1997.

Samuel L. Spear, Bruce E. Endy, Philadelphia, for Association of Catholic Teachers, et al.

Philip J. Murren, Harrisburg, Herbert G. Keene, Harry J.J. Bellwoar, III, Philadelphia, for Norwood–Fontbonne Academy.

Rev. M.J. Fitzgerald, Philadelphia, for Archdiocese of Philadelphia.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

The sole question in this appeal is whether the lay teachers and librarians employed by the Norwood–Fontbonne Academy, a private Catholic elementary and secondary school, are "public employees" within the meaning of Section 301(2) of the

Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §§ 1101.101–1101.2301.

The case began in 1993 when two teachers at the Academy, Fagan and Doyle, allegedly attempted to organize a teachers' union. On June 9, 1993 the Association of Catholic Teachers, Local 1776 (the Association) filed a petition with the Pennsylvania Labor Relations Board (PLRB) to compel an election pursuant to Section 603 of PERA, 43 P.S. § 1101.603.[1] On June 18, 1993, the association filed a second petition, alleging that the Academy had terminated the employment of Fagan and Doyle because of their efforts to organize a union.

The secretary of the PLRB dismissed the petition because the Academy was not a "public employer" and because the employees were not "public employes" within the meaning of Section 301 of PERA. The PLRB dismissed exceptions and affirmed the secretary, holding that the teachers were not public employees.

The teachers appealed to the Court of Common Pleas of Philadelphia County, which reversed the PLRB, holding that the PLRB had jurisdiction. The academy appealed to Commonwealth Court, which reversed the trial court, holding that the statutory language which defines "public employe" excludes Catholic school teachers from coverage by the PERA.

We granted allocatur to consider the two issues raised by appellants: whether Catholic school employees are included by the PERA; and if they are, whether their inclusion violates the religion clauses of the First Amendment to the United States Constitution.

The parameters of our inquiry are set by the United States Supreme Court in *National Labor Relations Board v. The Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59

---

1. 43 P.S. § 1101.603 provides, in part:

(a) A public employe, a group of public employes or an employe organization may notify the public employer that thirty per cent or more of the public employes in an appropriate unit desire to be exclusively represented for collective bargaining purposes by a designated representative and request the public employer to consent to an election.

L.Ed.2d 533 (1979). In that case, the National Labor Relations Board ordered certain Catholic schools to bargain collectively with teachers' unions representing lay teachers. The United States Court of Appeals for the Seventh Circuit reversed the board, and the United States Supreme Court affirmed the Seventh Circuit's reversal, holding that the National Labor Relations Act does not extend to lay teachers employed by church-operated schools. The Court's rationale was that if the Board assumed jurisdiction over teachers in church-operated schools, there might be conflicts between the Board, an agency of government, and the church, which might implicate First Amendment religion clauses.[2] The Court concluded that jurisdiction, therefore, should not be conferred unless there was a "clear expression of an affirmative intention of Congress that teachers in church-operated schools should be covered by the Act." 440 U.S. at 504, 99 S.Ct. at 1320, 59 L.Ed.2d at 543. The Court concluded:

> Accordingly, in the absence of a clear expression of Congress' intent to bring teachers in church-operated schools within the jurisdiction of the Board, we decline to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the First Amendment Religion Clauses.

440 U.S. at 507, 99 S.Ct. at 1322, 59 L.Ed.2d at 545.

■ Although the National Labor Relations Act and the Public Employee Relations Act are not coterminous, in both *Catholic Bishop* and the present case the ultimate question is whether the unionization of lay employees of church-operated schools necessarily leads to government involvement which would violate the First Amendment of the United States Constitution. We are, therefore, bound by the analysis of *Catholic Bishop.* Thus, our first inquiry is whether the PERA clearly mandates the inclusion of teachers employed by

2. The First Amendment to the United States Constitution in pertinent part provides:
   Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . .

church-operated schools as public employees. The PERA defines "public employe" as follows:

> any individual employed by a public employer but shall not include ... clergymen or other persons in a religious profession, employes or personnel at church offices or facilities when utilized primarily for religious purposes....

43 P.S. § 1101.301. The act defines "public employer" as:

> the Commonwealth of Pennsylvania, its political subdivisions including school districts and any officer, board, commission, agency, authority, or other instrumentality thereof and any nonprofit organization or institution and any charitable, religious, scientific, literary, recreational, health educational or welfare institution receiving grants or appropriations from local State or Federal governments....

43 P.S. § 1101.301.

As the lower courts have observed, the statutory language defining public employees is not a model of clarity. The Commonwealth Court noted that it is not idiomatic in English to refer to an individual as "utilized" for any purpose. It concludes from this that the phrase "when utilized primarily for religious purposes" modifies "church offices or facilities." In other words, the Commonwealth Court understands the statute to provide that an employee of a church-operated school is *not* a public employee when the school ("the church facility") is primarily used for religious purposes.

Under this interpretation, the question then becomes whether the academy is primarily used for religious purposes. As the Commonwealth Court notes, the Association does not dispute that the academy is operated primarily for religious purposes. 671 A.2d at 1210.[3] The lower court concludes,

---

**3.** Speaking of the schools of the archdiocese of Philadelphia and its parishes, the United States Supreme Court has said that "[t]he *raison d'etre* " of these schools "is the propagation of a religious faith," *Lemon v. Kurtzman*, 403 U.S. 602, 628, 91 S.Ct. 2105, 2118, 29 L.Ed.2d 745 (1971) (Concurring Op. of Mr. Justice Douglas), and that "it would simply ignore reality to attempt to separate secular educational functions from the predominantly religious role" of these schools, *Meek v. Pittenger*, 421 U.S. 349, 365, 95 S.Ct. 1753, 1763, 44 L.Ed.2d 217, 232

therefore, that the employees of the Academy are not public employees within the meaning of the PERA.

We agree with this interpretation, noting additionally that when an ambiguous clause acts as a modifier, it usually modifies the noun closest to the clause in question. Here, the language of the statute is: " 'Public employe' ... shall not include ... employes ... at church ... facilities when utilized primarily for religious purposes...." The two possible meanings of this ambiguous sentence are that public employees do not include those who work at religious facilities so long as they are performing primarily religious duties; or that public employees do not include those who work at religious facilities so long as the facilities are being used primarily for religious purposes. In our view, the latter interpretation is the more plausible, both because English idiom favors a language pattern in which facilities are used for religious purposes rather than employees, and also because it is customary, as we already observed, to apply an ambiguous modifying clause to the closest noun rather than to a more remote noun.

■ Even if there were some doubt as to the accuracy of this view, however, it is certain that the General Assembly has not clearly and affirmatively expressed an intention to include lay teachers at religious schools within the PERA's definition of public employees, and thus, following the analysis set out in *Catholic Bishop of Chicago,* we may not extend the jurisdiction of the PERA to religious schools. Of course, the General Assembly is free to amend the language of the PERA and to include lay teachers at religious schools if it so chooses, and in that event, we may then be required to consider whether the inclusion of lay teachers as public employees within PERA

(1975). Following these cases, the United States District Court for the Eastern District of Pennsylvania has stated:

There can be no question as to the religious nature of the parish schools. It is also beyond peradventure that the admitted secular characteristics of the schools are so intertwined with the schools's religious mission, that they blend imperceptibly one into the other. *Caulfield, et at. v. Hirsch, etc. and Association of Catholic Teachers,* 95 L.R.R.M. (BNA) 3164, 1977 WL 15572 (E.D.Pa.1977).

violates the religion clauses of the First Amendment or of the Constitution of Pennsylvania.

The order of the Commonwealth Court is affirmed.

NEWMAN, J., did not participate in the consideration or decision of this case.

NIGRO, J., concurs in the result.